UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SAMANTHA WHITE                                             CIVIL ACTION

VERSUS                                                     NO. 17-12206

GREG CHAMPAGNE                                             SECTION: M (4)
AS SHERIFF OF
ST. CHARLES PARISH

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant Greg Champagne, Sheriff of St. Charles Parish ("Champagne"),[1] to which plaintiff Samantha White ("White") responds in opposition,[2] and in further support of which Champagne replies.[3] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I.   BACKGROUND**

This case involves employment discrimination claims. In her complaint, White, a black woman, alleges that Champagne, a Caucasian man and her former employer, discriminated against her on the basis of race, gender, and disability, and that he retaliated against her.[4] Specifically, White alleges that Champagne discriminated against her on the basis of race and gender in January 2015, when she was transferred to light duty in the corrections department due to her pregnancy, and at the same time another female deputy, who was white and also pregnant, was promoted to detective.[5]

---

[1] R. Doc. 24.
[2] R. Doc. 27. The submission date of Champagne's motion was December 6, 2018. Local Rule 7.5 of the United States District Court for the Eastern District of Louisiana requires that a memorandum in opposition to a motion must be filed no later than eight days before the noticed submission date. Thus, White's opposition was due on November 28, 2018. White filed her opposition on November 30, 2018. Because White's opposition memorandum was only two days late, and Champagne has not established that he was prejudiced by the late filing, White is granted leave to file her opposition memorandum, and this Court will consider it.
[3] R. Doc. 32.
[4] R. Doc. 1. White is no longer pursuing the retaliation claim. See R. Doc. 27 at 7 n.31.
[5] R. Doc. 1. at 2.

White alleges that Champagne discriminated against her on the basis of disability in February 2016, when she was terminated from her employment.[6] White claims that she experienced postpartum depression after the birth of her child in September 2015, and that she missed work on several occasions due to the symptoms of her depression.[7] White contends that she followed protocol each time she had to miss work due to her depression, but was written up several times, including for missing work on December 19, 2015.[8] On December 22, 2015, Captain Jessica Troxclair ("Troxclair") contacted White and asked her to sign a write-up related to White's December 19, 2015 absence.[9] White told Troxclair that she could not do so because she had to pick her children up from school.[10] On January 29, 2016, Lieutenant Jared Peranio ("Peranio") informed White that she was being suspended without pay for ten days: three days related to the December 19, 2015 absence, and seven days related to her failure to report on December 22, 2015, to sign the write-up.[11] White alleges that she was placed on "leave without pay" status and then terminated in February 2016.[12]

White filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 15, 2016, alleging claims of discrimination based on race, gender, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Pregnancy Discrimination Act, 42 U.S.C. §§ 12101, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and Louisiana law.[13] On August 9, 2017, the EEOC sent White a right-to-sue letter.[14] White claims that she received the letter on August 12,

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at 2-3.
[9] *Id.* at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] R. Doc. 24-2 at 92.
[14] R. Doc. 1-1.

2017.¹⁵ White filed this action against Champagne on November 10, 2017, seeking compensatory damages and punitive damages related to the alleged discrimination, along with attorney's fees.¹⁶

## II. PENDING MOTION

Champagne filed the instant motion for summary judgment arguing that White cannot prevail on her claims against him. Specifically, he argues that White's race and gender discrimination claims must be dismissed for failure to exhaust administrative remedies because White did not timely file her charge of discrimination related to those claims with the EEOC.¹⁷ Champagne also argues that he is entitled to summary judgment on White's ADA claim because White has not proved that she had a disability at the time of her discharge or that she was discharged for such alleged disability.¹⁸ Rather, Champagne argues that White was terminated for the non-discriminatory reason of her failure to submit to a medical evaluation to determine her fitness to serve as a deputy.¹⁹

White argues that this Court should deem her race and gender discrimination claims to be timely because the EEOC investigated those claims and issued a right-to-sue letter.²⁰ She also argues that there are genuine issues of material fact that preclude summary judgment on the merits of those claims.²¹ As to her ADA claim, White argues that she was a qualified individual with a disability, namely postpartum depression, and that there are genuine issues of material fact regarding whether she was terminated as a result of this disability.²²

---

¹⁵ R. Doc. 1 at 4.
¹⁶ *Id.* at 4-5.
¹⁷ R. Doc. 24-1 at 10-14.
¹⁸ *Id.* at 14-22.
¹⁹ *Id.* at 17-22.
²⁰ R. Doc. 27 at 6-7
²¹ *Id.* at 7-13.
²² *Id.* at 13-19.

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v.*

*Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

B. **Timeliness of White's EEOC Charge of Discrimination**

A plaintiff alleging discrimination claims must exhaust her administrative remedies prior to filing suit in the district court by filing a timely charge of discrimination with the EEOC. *Jones v. City of Houston*, 2018 WL 6131132, at *5 (5th Cir. Nov. 20, 2018) (citing 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)). In a

deferral state, such as Louisiana,[23] a plaintiff must file her charge with the EEOC within 300 days from the date of the alleged discriminatory act to preserve her right to sue in federal court. *DeBlanc v. St. Tammany Parish Sch. Bd.*, 2015 WL 1245781, at *6 (E.D. La. Mar. 18, 2015) (citing 42 U.S.C. § 2000e-5(e)(1) (providing that a Title VII plaintiff must file a charge within 300 days after the alleged unlawful employment practice in deferral states); 42 U.S.C. § 12117(a) (incorporating Title VII remedies and procedures for ADA claims)).

The filing of a timely EEOC charge is not jurisdictional. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008). Rather, it is a statute of limitations that "'is subject to waiver, estoppel, and equitable tolling.'" *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 358, 393 (1982)). The Fifth Circuit has identified three grounds for equitable tolling: (1) "the pendency of a suit between the same parties in the wrong forum"; (2) that the plaintiff "was unaware of facts giving rise to this claim because of [the defendant's] intentional concealment"; or (3) "that the EEOC misled [the plaintiff] about the nature of her rights." *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 209 (5th Cir. 2015) (citing *Granger v. Aaron's, Inc.,* 636 F.3d 708, 712 (5th Cir. 2011); *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 233-34 (5th Cir. 1999)). A plaintiff who fails to timely file an EEOC charge bears the burden of demonstrating a factual basis supporting equitable tolling of the limitations period. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988).

White alleges that Champagne discriminated against her on the basis of race and gender in January 2015.[24] She did not file her charge of discrimination with the EEOC until almost two years later, in November 2016.[25] White has not argued nor demonstrated any basis for equitable tolling.[26] Instead, White argues that this Court should deem her EEOC charge to be timely filed

---

[23] States with a state or local administrative mechanism are referred to as deferral states and those without such an agency are referred to as non-deferral states.
[24] R. Doc. 1 at 2.
[25] R. Doc. 24-2 at 90.
[26] *See* R. Doc. 27.

because the EEOC allegedly investigated her race and gender discrimination claims.[27] The EEOC's alleged investigation of those claims is immaterial. The Fifth Circuit has held that "the EEOC's investigation of an untimely filed claim does not safeguard that claim from dismissal [because] federal courts are expected to make an independent determination as to a claimant's compliance with Title VII's filing requirements." *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 573 (5th Cir. 2013) (quotations omitted). Therefore, Champagne is entitled to summary judgment on White's race and gender discrimination claims brought under Title VII due to White's failure to timely exhaust her administrative remedies.

Moreover, White's race and gender discrimination claims brought under Louisiana law are time barred. Louisiana law allows for a maximum prescriptive period of 18 months as to discrimination claims. La. R.S. 23:303(D) (providing that claims are subject to a prescriptive period of one year and a suspension of no more than six months while claims are pending with the EEOC or Louisiana Commission on Human Rights). White alleges that Champagne discriminated against her on the basis of race and gender in January 2015, but did not file this action until more than 18 months later in November 2016.[28] Therefore, Champagne is entitled to summary judgment on White's race and gender discrimination claims brought under Louisiana law because they were untimely filed.

### C. White's ADA Claim

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to … discharge …." 42 U.S.C. § 12112(a). To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that she has a disability, or was regarded as disabled; (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision on account of her disability. *Cannon v. Jacobs Field Services N.*

---

[27] *Id.* at 7.
[28] *See* R. Doc. 1.

*Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). If a plaintiff can establish a *prima facie* case of discrimination, "a presumption of discrimination arises," and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Thereafter, if the defendant meets its burden, the burden of production shifts back to the plaintiff to

> offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*LHC Grp.*, 773 F.3d at 702 (citing *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004) (citations and internal quotation marks omitted); *Evans v. Tex. Dep't of Transp.,* 547 F. Supp. 2d 626, 640 (E.D. Tex. 2007) (applying same analysis to cases under ADA)).

Champagne argues that White cannot establish a *prima facie* case of discrimination under the ADA because she cannot show that she had a disability or was regarded as having one.[29] Further, Champagne argues that White cannot show that she was terminated on account of a disability, but rather that she was terminated for her failure to comply with the Sheriff's Office's legitimate request that she undergo a fitness-for-duty examination.[30]

The ADA defines "disability" as a person who has: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment …." 42 U.S.C. § 12102(1). "Substantially limits" is interpreted with respect to a person's ability "'to perform a major life activity as compared to most people in the general population.'" *Cannon*, 813 F.3d at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

---

[29] R. Doc. 24-1 at 15.
[30] *Id.* at 16-21.

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Champagne, citing White's medical records and deposition testimony, argues that White has not demonstrated that she had a disability at the time of her termination.[31] On September 21, 2017, White reported to her primary physician that she did not have depression.[32] Further, none of White's medical records from her OB/GYN, Dr. Lisa Colon, indicates that White was diagnosed with postpartum depression.[33] At her deposition, White testified that Dr. Colon released her to work without limitation in September 2015, and White did not tell anyone that she had a disability.[34] Also, Dr. Colon knew that White previously had postpartum depression after the birth of her fourth child in 2009, and prescribed antidepressants to White after the birth of her fifth child in 2015 to prevent the condition from reoccurring.[35] White has not presented any evidence that proves she actually had a diagnosed disability in 2015 that substantially limited one of the major life activities as defined in the statute and regulations.

Additionally, Champagne argues that White cannot prove that he regarded her as having a disability because he had a legitimate reason for requiring that she submit to a fitness-for-duty examination.[36] White contends that there are genuine issues of material fact regarding whether Champagne fired her because she was regarded as having a disability.[37] White argues that she was fired solely for her failure to submit to the fitness-for-duty examination, which the Sheriff's Office was requiring her to undergo to discover whether she had postpartum depression, after the Sheriff's Office placed the burden of obtaining the medical release form on her, did not assist her

---

[31] *Id.* at 15.
[32] R. Doc. 24-4 at 6.
[33] R. Doc. 24-5 at 1-10.
[34] R. Doc. 24-3 at 22.
[35] *Id.* at 24.
[36] R. Doc. 24-1 at 15-21.
[37] R. Doc. 27 at 19.

in obtaining the examination, and did not inform her that she would be terminated if she failed to comply with the examination requirement.[38]

An employer is generally prohibited from requiring a medical examination or making inquiries of an employee as to whether she has a disability, "unless such examination or inquiry is shown to be job-related and consistent with business necessity." *Id.* at § 12112(d)(4)(A). A business necessity sufficient to justify an examination "may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism." *Ward v. Merck & Co.*, 226 F. App'x 131, 140 (3d Cir. 2007).

To that end, when an employer learns that an employee is experiencing mental-health difficulties, the employer may conduct a reasonable inquiry into the employee's mental health if the inquiry is job-related and reflects a concern for the safety of the employees or the public at large. *Krocka v. City of Chicago*, 203 F.3d 507, 515 (7th Cir. 2000). Such an inquiry may include requiring the employee to provide specific medical information or undergo an examination designed to determine her ability to work. *Id.* Because public safety is at issue, "it is entirely reasonable, and even responsible, for" a law enforcement entity to evaluate an officer's fitness for duty once it learns that she is experiencing difficulties with her mental health. *Id.* Moreover, "[t]he steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job function are not proof … that the employer regarded the employee as disabled." *Id.*

In this case, Champagne required White to undergo a fitness-for-duty examination after he was informed that she was experiencing mental-health issues.[39] This inquiry was entirely reasonable, and responsible, to protect public safety considering that White was a deputy who normally carried a badge and gun in public. The record is clear that White did not undergo the

---

[38] *Id.*
[39] R. Doc. 24-1 at 21.

examination and was terminated as a result. There is no evidence that Champagne terminated White because of a perceived disability, but rather because she failed to comply with the reasonable request that she undergo an examination to determine whether she was fit for duty. Therefore, Champagne is entitled to summary judgment on White's ADA claim.[40]

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Champagne's motion for summary judgment (R. Doc. 24) is GRANTED, and White's claims against him are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 11th day of December 2018.

BARRY W. ASHE  
UNITED STATES DISTRICT JUDGE

---

[40] Claims brought under Louisiana's employment discrimination law "are analyzed using the same framework and precedent as ADA claims." *Johnson v. JP Morgan Chase Bank, N.A.*, 293 F. Supp. 3d 600, 615 (W.D. La. 2018) (citing *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989); *see also Scott v. Turner Indus. Grp., LLC*, 2011 WL 5023840, at *4 (M.D. La. Oct. 19, 2011) ("The ADA and LEDL [Louisiana Employment Discrimination Law] provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.")). Therefore, Champagne is also entitled to summary judgment on White's disability discrimination claims under Louisiana law.